UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> FLEXO SUPPLY COMPANY, INC., and THE STOVEY COMPANY, <br><br> Defendants. | Case No. 4:05CV00896 FRB |

**MEMORANDUM AND ORDER**

Presently pending before the Court are cross motions for summary judgment filed by plaintiffs Liberty Mutual Fire Insurance Company, et al. ("plaintiffs" or "Liberty") (Docket No. 63/filed September 21, 2007), and defendants Flexo Supply Company, et al. ("defendants" or "Flexo") (Docket No. 77/filed February 26, 2008). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Although the facts of this case were explained in detail in this Court's June 26, 2007 Order, ruling upon the parties' first cross-motions for summary judgment, following is a brief synopsis of the relevant facts and procedural history. Liberty filed this action on June 1, 2005 seeking declaratory relief as to its insurance obligations to Flexo under insurance policies covering

seven consecutive years.  Liberty is an insurance company headquartered in Boston, Massachusetts, and Flexo was incorporated in Missouri in 1922 as an insulation contractor.  Prior to December, 1972, Flexo discontinued all of its operations involving asbestos.  In 1979, Liberty issued its first policy to Flexo covering the period beginning May 1, 1979 and ending May 1, 1982.  Liberty then began issuing policies to Flexo on an annual basis for the next four years, and the last policy period ended on May 1, 1986.  The parties do not dispute that all of the policies read essentially the same.

The record reflects that Flexo was a defendant in at least 63 asbestos-related bodily injury lawsuits in which Liberty defended and indemnified Flexo, and that such claims continue to be filed against Flexo.  In its June 26, 2007 Order, this Court ruled, <u>inter</u> <u>alia</u>, that Liberty's defense and indemnification of Flexo fell under the "products hazard/completed operations hazard" provisions of the policies, and it is undisputed that all of the policies limited Liberty's exposure to $500,000.00 per year for payments made pursuant to these provisions.  It is also undisputed that the policies provided that Liberty's duty to defend and/or indemnify Flexo ended upon exhaustion of policy limits.[1]

---

[1]The relevant portion of the policies reads as follows:

> [B]ut the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The record reflects that, as Liberty's calculations revealed that the applicable aggregate policy limits were eroding, it advised Flexo in writing, stating that the policy limits were nearing exhaustion and that its coverage would terminate upon exhaustion, and recommending that, in light of the severity of the asbestos claims, Flexo identify another insurer. (Docket Nos. 23-14 through 23-18.) In response, Flexo's counsel submitted demands, via letter and email, that Liberty continue to defend and indemnify Flexo in the asbestos cases. (Docket Nos. 23-20 and 23-21.)

In its complaint, filed June 1, 2005, Liberty requested a declaratory judgment that the aggregate policy limits were exhausted, and Liberty therefore had no further duty to defend or indemnify Flexo regarding claims alleging asbestos-related bodily injury. Liberty further requested an award of damages in the amount it paid in defense and indemnity costs in excess of policy limits,[2] and prejudgment interest.

The parties previously filed cross-motions for summary judgment. At that time, Liberty argued, <u>inter</u> <u>alia</u>, that because it had documented proof of payments exceeding $3.5 million (the total of $500,000.00 annually over the seven policy years), it had established the exhaustion of all five policies and was entitled to

---

Liberty policy number LG1-141-065704-085 (Docket No. 29-8 at 19.)

[2]In its most recent motion for summary judgment, Liberty claims this amount totals $986,007.35.

declaratory relief.  In its June 26, 2007 Order, this Court ruled that proof of payments aggregating the policy limits of all seven years of coverage was insufficient to allow this Court to rule that each specific policy was exhausted.  Noting the decision of the Missouri Court of Appeals in <u>Handleman v. U.S. Fidelity & Guaranty Company</u>, 18 S.W.2d 532, 534 (Mo. Ct. App. 1929), which held that an insurer can establish exhaustion by proving settlement of claims aggregating the full amount "of the specific policy", this Court concluded that merely proving payments exceeding the total policy limits of all of the policies considered together was insufficient to allow this Court to rule that Liberty had exhausted each specific policy in accordance with Missouri law.

In response, Liberty's director of the Coverage, Complex and Emerging Risks Claims Department, Ms. Maureen Mulroy, identified and reviewed 62 of 63 civil complaints filed against Flexo alleging bodily injury from exposure to asbestos, in which Liberty had defended and indemnified Flexo.[3]  In her September 21, 2007 sworn declaration detailing her findings, Ms. Mulroy indicated that the complaints all alleged dates of first exposure to asbestos ranging from 1937 to 1971, years before Liberty issued its first policy to Flexo. (Docket No. 63-3 at 3.)  Based upon the dates of alleged first exposure to asbestos, Ms. Mulroy allocated the

---

[3] Ms. Mulroy indicated that she reviewed 62 of 63 complaints, and that neither she nor Flexo's defense counsel could locate a copy of the complaint referable to Mr. Bobby Boyd, to whom a $1,000.00 settlement was paid. (Docket No. 63-3 at 2.)

settlement payments evenly across each of the Liberty policies, set forth in her declaration at Exhibit D. (Id. at 22-24.) According to this allocation, as of July 6, 2005, Flexo's coverage was exhausted, and Liberty had made excess payments of $54,045.26 in indemnity (according to Liberty's records), and $931,962.09 in defense costs. (Id. at 4.) Ms. Mulroy indicated that documentation provided by Flexo's defense counsel reflected a somewhat higher amount in indemnity payments, but Liberty's attorney herein has indicated that Liberty seeks only the amount its records reflect, which is $54,045.26. See Id. at 3.

In the instant motion for summary judgment, Liberty argues that allocation of payments in this manner is appropriate under the instant facts, and sufficiently establishes exhaustion of each specific policy. Liberty reasons that, because the complaints establish that all of the alleged dates of first asbestos exposure pre-dated Liberty's first policy, the filing of the complaints did not necessarily implicate any one policy more than another. As a result, when a complaint alleging bodily injury due to asbestos was filed, each policy essentially responded equally, and Ms. Mulroy's allocation of payments evenly across each policy reflects this. In support of its argument that the evidence now before the Court is sufficient to establish the exhaustion of each specific policy, Liberty notes that the Missouri Court of Appeals, in Handleman, rejected a "harsh and unreasonable" construction of exhaustion. Finally, Liberty argues that it is entitled to recover damages and

prejudgment interest from Flexo in the amount it alleges it has paid in defense and indemnity costs in excess of policy limits.

In its cross-motion for summary judgment, Flexo argues that Liberty cannot establish exhaustion of the policies. Flexo contends that Ms. Mulroy's allocation of payments evenly across the policies is arbitrary, and suggests that Liberty is withholding documents that would link each payment to a specific policy. Flexo argues that some of the complaints Ms. Mulroy produced fail to name Flexo as a defendant, and that Ms. Mulroy's declaration is filled with incorrect, inaccurate and unsupported statements. Flexo also argues that Liberty failed to adequately respond to prior discovery demands. Finally, Flexo argues that allowing Liberty to recover damages would violate public policy. In support, Flexo cites <u>Reliance Ins. Co. in Liquidation v. Chitwood</u>, 433 F.3d 660, 663 (8th Cir. 2006) (citing <u>Jos. A. Bank Clothiers, Inc. v. Brodsky</u>, 950 S.W.2d 297, 303 (Mo. Ct. App. 1997) for the proposition that allowing an insurer to sue for recovery against its own insured would violate principles of subrogation and equity, as well as public policy.

**A.    Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Summary judgment is an "extreme remedy", however, and should be denied unless the movant has "established his right to judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any possible circumstances." New England Mutual Life Insurance Company v. Null, 554 F.2d 896, 901 (8th Cir. 1977). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

In considering a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Company v. Zenith Radio, 475 U.S. 574, 587 (1986). When the movant has carried its burden under Rule 56(c), its opponent must do more than demonstrate the existence of "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586-587. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id.

**B.   Exhaustion**

Liberty submits that Ms. Mulroy's allocation of payments evenly across all of the policies is appropriate because, when each asbestos case was filed, each policy essentially responded equally. Liberty concludes that, because each policy responded equally and payments in excess of $500,000.00 were made under each policy, it has established the exhaustion of each specific policy. Flexo contends that Ms. Mulroy simply crafted her own arbitrary allocation, and further suggests that Liberty is withholding "Aggregate Remaining Loss Summary" documents because they are unfavorable to Liberty. Flexo further contends that some of the complaints do not list Flexo as a defendant, and concludes that Liberty is wholly unable to attribute any of the payments to any specific policy. Liberty's argument is well-taken.

The evidence now before this Court is sufficient to sustain a finding that the limits of each specific policy have been exhausted. Although neither party cites this Court to any authority on this issue (other than Handleman), the undersigned finds guidance in the Second Circuit's use of a liability apportionment formula in the case of Stonewall Ins. Co. v. Asbestos Claims Management, 73 F.3d 1178 (2nd Cir. 1995), modified on other grounds, 85 F.3d 49 (2nd Cir. 1996). There, defendant National Gypsum Company ("NGC")[4] had several different insurance policies issued by primary and excess insurers covering different periods.

---

[4] The court noted that it would refer to NGC, although Asbestos Claims Management had been substituted for NGC.

Id. at 1187. A coverage dispute arose, and insurer Stonewall filed for declaratory relief against NGC and other insurers to clarify the extent to which NGC was entitled to coverage from it and the other insurers for asbestos-related bodily injury and property damage claims. Id. at 1187, 1189.

The Second Circuit noted that substantial issues of interpretation arose where several insurance policies potentially applied to progressive injuries, or injuries in which the harm did not fully manifest until years after exposure to the damaging material. Id. at 1201-02. In resolving this issue, the court noted that one single asbestos-related claim would necessarily trigger all of the policies in effect during the multi-year period of the disease process. Stonewall, 73 F.3d at 1201-02. So noting, the court approved a pro-rata approach, spreading liability over the policies based in part upon the years they had been in effect. Id. at 1202.

While Stonewall involved a coverage dispute between multiple insurers with policies covering different periods, which is not the case here, its logic is applicable. Stonewall supports the conclusion that multiple insurance policies are simultaneously triggered when claims alleging asbestos-related bodily injury, a progressive injury, are filed. Here, because Ms. Mulroy's review of the civil complaints revealed that none of the complaints necessarily implicated one policy more than any other, Liberty's argument that all of its policies responded simultaneously and

equally to each claim is well-taken. This kind of approach (although once again dealing with a case involving multiple insurers) has been cited with approval by the Missouri Court of Appeals in Continental Casualty Co. et al. v. The Medical Protective Co., 859 S.W.2d 789, 792 (Mo. Ct. App. 1993) (in cases of progressive diseases, proration of the loss among consecutive insurers should be based upon the period each was exposed to potential liability, citing Insurance Company of North America v. 48 Insulations, Inc., 633 F.2d 1212, 1222 (6th Cir. 1980)).

None of Flexo's arguments approach the level of creating a material disputed fact. Contrary to Flexo's assertion, Ms. Mulroy's allocation of payments evenly across all of Liberty's policies is not arbitrary, as explained above. Furthermore, it is not reasonable to infer that internal documents are being withheld because they defeat Liberty's position. As explained above, because the complaints confirm that none of the claims necessarily implicated any one policy more than another, the method Ms. Mulroy used to allocate payments to each individual policy is the best method at Liberty's disposal, and is reasonable. Furthermore, in her February 1, 2008 deposition, Ms. Mulroy explained that the internal documents Flexo specifies are not useful to the application of payments to specific policies because they were incomplete, they included information related to policies other than Flexo's, and contained data entry errors. Flexo also contends that there are nine complaints that do not list Flexo/Stovey as a

defendant.  However, the record reflects that eight of the nine complaints were timely amended to add Flexo/Stovey as a defendant, with the exception of one claim which obviously alleged injury due to Flexo's asbestos-related operations and was settled before a complaint was ever filed.  Via these arguments, Flexo merely creates "metaphysical doubt as to the material facts", insufficient to defeat Liberty's motion for summary judgment on this issue. Matsushita, 475 U.S. at 586-587.

Liberty has met its burden of demonstrating that the record is void of genuine issues of material fact, and is entitled to judgment as a matter of law that each of the policies it issued to Flexo has been exhausted.  Flexo has not demonstrated facts that show there remains a genuine issue to be resolved at trial.  The evidence Liberty has provided is sufficient to allow a jury to return a verdict in its favor on the issue of exhaustion.  To refuse to accept the evidence Liberty now submits on this issue would offend Handleman, which rejected a "harsh and unreasonable" construction of exhaustion.  18 S.W.2d at 534.

**C.  Duty to Defend and Indemnify**

Having determined that Liberty has established the exhaustion of each specific policy, the Court turns to Liberty's request for declaratory judgment that it has no further duty to defend or indemnify Flexo, and the issue of whether Liberty is entitled to recover damages from Flexo in the amount of

$986,007.35, which is the amount Liberty alleges it paid in excess of exhaustion. Liberty cites no authority, but argues that if it is not allowed to recover this amount, Flexo would essentially receive a windfall, inasmuch as it would have received more than its contracts of insurance provided. Flexo argues that allowing Liberty to recover damages against it would violate public policy, and in support cites Chitwood, 433 F.3d at 663 (citing Brodsky, 950 S.W.2d at 303). Flexo also contends that the figure Liberty contends it is owed is unreliable.

In Missouri, a liability insurer has both a duty to indemnify the insured for covered losses, and the duty to defend claims falling within the ambit of the policy, even if it may not ultimately be obligated to indemnify. American States Ins. Co. v. Herman C. Kempker Constr. Co., 71 S.W.3d 232, 236, 239 (Mo. Ct. App. 2002). The duty to defend is more broad than the duty to indemnify; therefore, if there is no duty to defend, there can be no duty to indemnify. Id. at 236.

As noted, supra, it is undisputed that the policies at issue herein provided that Liberty's duty to defend Flexo would terminate upon exhaustion of the applicable policy limits. The Missouri Court of Appeals has upheld as unambiguous and enforceable policy provisions terminating an insurer's duty to defend upon exhaustion of policy limits, and has expressly rejected an argument that such provisions were against public policy. Millers Mutual Insurance Association of Illinois v. Shell Oil Company, 959 S.W.2d

864, 871 (Mo. Ct. App. 1998). (An insurance policy is a contract that must be enforced as written, and there is "no persuasive authority supporting the proposition that an unambiguous policy provision stating the insurer's duty to defend will terminate upon payment of policy limits should be disregarded or voided for reasons of public policy.")

Because this Court has determined that Liberty has exhausted the limits of each policy, this Court now determines, pursuant to the unambiguous language in the policies, that Liberty has no further duty to defend Flexo. Because the duty to defend is more broad than the duty to indemnify, this Court further finds that Liberty has no further duty to indemnify Flexo. See American States Ins. Co., 71 S.W.3d at 236.

**D.  Damages**

Turning to the issue of whether Liberty is now entitled to recover damages from Flexo, this Court, cited to no authority, once again finds guidance in Stonewall. There, the Second Circuit allocated liabililty to the insured for those years in which it was essentially uninsured because it had either elected not to purchase coverage, or had purchased insufficient coverage, as evidenced by the exhaustion of policy limits.[5] Stonewall, 73 F.3d at 1201-04. The rationale was that an insured should be held responsible for

---

[5]The Second Circuit did not affirm the district court's application of the pro-ration to the insured approach for years after 1985, when the record before the court reflected that asbestos liability insurance was unavailable. Stonewall, 73 F.3d at 1203-04.

the risks it elects to assume, as evidenced by the insurance it purchases or fails to purchase. In this case, Flexo purchased insurance which was insufficient to cover its losses, as evidenced by the exhaustion of the applicable policy limits. It is therefore logical to conclude that, when Flexo contracted with Liberty for the policies, it was willing to assume those risks not covered by the policies. Furthermore, as noted above, the record reflects that even though Liberty repeatedly advised Flexo of the erosion of the applicable policy limits, Flexo continued to demand defense and indemnification. This Court sees no reason why Flexo should receive coverage beyond that for which it contracted and paid premiums.

As noted above, the <u>Stonewall</u> court declined to hold the insured responsible for periods after 1985, when the record before the court reflected that asbestos-liability insurance was no longer available. Unavailability of relevant coverage does not seem to be at issue in this case. Here, the parties do not submit, nor does the record reflect, any evidence that the coverage Flexo had through Liberty, which covered Flexo's liability for products/completed operations hazards was unavailable to Flexo after 1985. In fact, the last Liberty policy, pursuant to which Liberty paid asbestos-related bodily injury claims, covered the period from May 1, 1985 through May 1, 1986. There is no evidence before this Court supporting the conclusion that Flexo was or would have been unable to obtain the same coverage from Liberty or some

other insurer after 1985, and there is therefore no reason to decline to assign responsibility to Flexo after this date.

These parties contracted for these insurance policies. The clauses in question, limiting Liberty's exposure and terminating its duty to defend, are unambiguous. Flexo cites no persuasive authority compelling this Court to decline to hold it liable for those amounts it demanded, and received, in excess of what it contracted for.

Flexo fails to create a material issue of fact regarding the amount Liberty claims it is now owed. Flexo suggests that Ms. Mulroy had no personal knowledge of defense costs, had not reviewed billing statements, and that Liberty's figures changed. On the contrary, the record reflects that Ms. Mulroy testified during her February 1, 2008 deposition that she received the defense cost information from Liberty's environmental claims specialist who had handled the Flexo/Stovey claims, who had obtained the cost information directly from Flexo's defense counsel. Furthermore, in her March 14, 2008 sworn Declaration, Ms. Mulroy declared that Liberty had expended $931,962.09 in defense costs, and attached Liberty's internal record reflecting payment of defense costs in the amount of $938,202.01, which she explained was later reduced by a credit taken by Liberty in the amount of $6,239.92. (Docket No. 83-2 at 4; and Docket No. 83-11 (Exhibit 8.)) Regarding indemnity payments, Ms. Mulroy, via her September 21, 2007 Declaration, stated that Liberty's internal records revealed that it had paid a

total of $54,045.25 in excess of exhaustion. (Docket No. 63-3 at 3.) Ms. Mulroy declared that the information provided by Flexo's defense counsel showed an excess indemnity payment of $68,498.57, but that Liberty's internal records showed an overpayment of only $54,045.26. (Id. at 3.) Liberty indicates that it will seek summary judgment only for the lower overpayment documented by its records. Flexo offers no evidence which rebuts the evidence offered by Ms. Mulroy in her sworn declarations. Liberty has established that it is entitled to receive $986,007.35, which reflects $54,045.26 in excess indemnity payments and $931,962.09 in excess defense costs paid on Flexo's behalf in excess of policy limits.

**E.    Prejudgment Interest**

This Court finally turns to the issue of whether Liberty is entitled to prejudgment interest. Liberty requests that this Court grant prejudgment interest, but cites no authority in support of its request.

The availability of prejudgment interest in this case is governed by Mo.Rev.Stat. § 408.020, which provides: "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." The undersigned is aware of no precedent addressing the issue of

- 16 -

whether an insurer can recover prejudgment interest against its insured. However, the undersigned notes that the Eighth Circuit has interpreted Missouri case law as supporting the extension of § 408.020 to allow prejudgment interest on claims for indemnity by an excess insurer against a primary insurer. Chitwood, 433 F.3d at 665, (citing Weinberg v. Safeco Ins. Co. of Ill., 913 S.W.2d 59, 62 (Mo. Ct. App. 1995) (allowing prejudgment interest when one insurer paid part of another insurer's obligation); Federal Ins. Co. v. St. Paul Fire and Marine Ins. Co., 985 F.2d 979, 980 (8th Cir. 1993) (per curiam) (allowed an excess insurer to recover prejudgment interest on expenses advanced on behalf of the primary insurer.)) The Chitwood court noted that the foregoing decisions promoted one of the general purposes of prejudgment interest, which was "to compensate for the use of or loss of use of money to which a person is entitled." Chitwood, 433 F.3d at 665, (citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. 1987).

In this case, Liberty advanced money on behalf of Flexo that Flexo was legally obligated to pay. This Court therefore concludes that Liberty is entitled to prejudgment interest of nine percent per annum.

It remains to be considered when prejudgment interest should begin to accrue. Section 408.020 allows prejudgment interest on accounts after they become due and demand of payment is made. As the Chitwood court noted, absent an earlier demand, Missouri law considers the date that the lawsuit was filed as the

date of demand.  General Aggregate Corp. v. LaBrayere, 666 S.W.2d 901, 910 (Mo. Ct. App. 1984).  However, the instant case was filed on June 1, 2005, and Liberty submits that Flexo's policy limits were not exhausted until July 6, 2005, according to Ms. Mulroy's September 21, 2007 Declaration (Docket No. 63-3 at 4.)  The Court therefore determines that prejudgment interest should begin accruing at the rate of nine percent per annum beginning July 6, 2005, as that is the date upon which it is established that Flexo's obligation to bear defense and indemnity costs began.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiffs' Renewed Motion for Summary Judgment (Docket No. (Docket No. 63/filed September 21, 2007) is **GRANTED** as provided herein.

**IT IS FURTHER ORDERED** that defendants' Renewed Motion for Summary Judgment (Docket No. 77/filed February 26, 2008) is **DENIED** as provided herein.

/s/ Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2008.